THE STATE v. MILLER, *Appellant.*

Division One, October 4, 1892.

1. **Criminal Law**: SPECIAL JUDGE: OATH. A special judge duly elected and in possession of the office according to law is a judge *de facto* though his official oath is not filed as required by law, and the proceedings of the court, if not challenged during his incumbency, cannot afterwards be questioned collaterally.

2. ———: INDICTMENT: RAPE. An indictment for rape charged to have been committed on a female under the age of twelve years *held* sufficient. *(State v. Wray, 109 Mo. 594, approved.)*

3. ———: CRIMINAL RESPONSIBILITY. Though a crime is committed through lack of sufficient will power to control his conduct and under an irresistible and uncontrollable impulse, the offender is responsible for the act.

4. **Criminal Practice**: ASSUMPTION OF FACT: INSTRUCTIONS. A judgment will not be reversed because of the assumption of a fact in an instruction, where taken in connection with the other instructions it could not have prejudiced the defendant.

5. ———: JUROR: HARMLESS ERROR. Where a juror by mistake of the clerk is impaneled under a wrong name, and there is no suggestion that the defendant accepted him under any misapprehension of his identity, the error is immaterial.

*Appeal from Phelps Circuit Court.*—HON. C. C. BLAND, Judge.

AFFIRMED.

*L. B. Woodside* with *L. Judson* for appellant.

(1) Instruction, numbered 5, asked by the defendant should have been given, and the principle therein set forth is the proper one in such cases. *Reg. v. Oxford*, 9 C. & P. 525; *Parton v. People*, 114 Ill. 505. The doctrine of uncontrollable impulse is recognized by all late writers on insanity, and the asylums furnish many instances of patients begging to be, restrained to prevent their doing injury to themselves and others. If this be true, can we hold a person accountable for that which he has not the power to avoid. (2) Instructions, numbered 4 and 6, should also have been given. There is a broad distinction between knowing a thing is wrong and knowing it is a crime, and, if on account of a diseased mind he had not mental capacity to know it was a crime, he is not legally responsible. We did not base the proposition on ignorance of the law, but upon a weakened and impaired mind. *Reg. v. Oxford*, 9 C. & P. 525; Wharton on Criminal Law, title, Non Comp. Men.; *Com. v. Rogers*, 7 Met. 500. (3) The court erred in giving instructions 1, 3 and 7 for the state, in each of which instructions the court assumes the facts charged to have been proven, and that the defendant is guilty if he was not insane at the time. *State v. Wheeler*, 79 Mo. 366; *Comer v. Taylor*, 82 Mo. 346. (4) The indictment does not allege that the offense was committed on any certain day. *First.* At common law this was necessary. Wharton on Criminal Law [2 Ed.] p. 111. *Second.* And the following cases hold that the statute of jeofails only cures this

defect when no objection is made before trial. *State v. West*, 21 Mo. App. 309; *State v. Hughes*, 82 Mo. 86. Other cases however to the contrary. (5) The indictment should have charged the act to have been forcibly done. *First.* Our statute makes this offense rape by its terms. *Second.* Rape is the carnal knowledge of a woman against her will and with force. Bouvier's Dictionary, rape. *Third.* For the reason that a child is incapable of giving consent, carnal knowledge of her is made rape; in other words, our legislature has declared as matter of law that such carnal knowledge is had only by force. *Fourth.* The legislature could just as well have made it a separate offense, but it is declared to be rape with full knowledge of the meaning of the word. (6) The record did not show that the oath of E. T. WINGO, special judge, was taken and filed as required by General Statutes, 1889, sections 3328 and 3329. (7) The defendant was entitled to a complete list of the jurors from which to make his challenges. General Statutes, 1889, sec. 4204.

*John M. Wood*, Attorney General, for the State.

(1) The record shows that the election was regular, and that the required oath was taken; and, when this clearly appears, the provision in regard to the filing of the oath in said sections must be held to be directory. *Cape Girardeau v. Riley*, 52 Mo. 424; *State v. Pitts*, 58 Mo. 556; *County Court v. Sparks*, 10 Mo. 117; *State v. Muir*, 20 Mo. 303; *State v. County Court*, 41 Mo. 247; *Young v. Camden Co.*, 19 Mo. 309; *Hicks v. Chouteau*, 12 Mo. 341. This is not a criminal law, and is not to be construed strictly. *State v. Ross*, 34 Mo. 336. (2) The indictment charges the offense in the language of the statute, and is sufficient. Revised Statutes, 1879, sec. 1253; *State v. Meinhart*, 73 Mo. 562. (3) No

exceptions were saved to the admission of any testimony on the part of the state. (4) The instructions given by the court relative to insanity followed approved precedents. *State v. Bryant,* 93 Mo. 273; *State v. Pagels,* 92 Mo. 314. And no error was committed in refusing those asked by the defendant. Taken as a whole, the instructions are such as have frequently been approved by this court, and were most favorable to the defendant. (5) No assignment was made in the motion for a new trial relative to the conduct of the prosecuting attorney in reading the section of the statute on which the prosecution was based, whilst making his opening statement to the jury, and the matter is not a subject of review. (6) No error was committed in receiving the verdict over defendant's objection that the list of jurors furnished him, and of the panel selected to try the case, contained by error of the clerk the name of H. E. Gideon, instead of James T. Gideon. *State v. Orrick,* 106 Mo. 111; *State v. Hultz,* 106 Mo. 41. The evidence warranted the verdict, and the judgment should be affirmed.

MACFARLANE, J.—An indictment was returned by the circuit court of Dent county at the April term, 1888, E. T. WINGO presiding as special judge, in which it was charged that defendant on or about the twenty-fourth day of February, A. D. 1888, at and in the county of Dent, in the state of Missouri, in and upon Effie McGuire, a female child under the age of twelve years, to-wit, of the age of nine years, unlawfully and feloniously did make an assault, and her (the said Effie McGuire) then and there unlawfully and feloniously did carnally know and abuse, etc.

On the application of defendant, a change of venue was taken to Phelps county, in which he was

VOL. 111—35

tried, convicted and sentenced to imprisonment for five years. From this sentence he appealed to this court.

The record shows that at the regular time and place of holding the April term, 1888, of the circuit court of Dent county, C. C. BLAND, the judge thereof "being absent, an election was held by the clerk of said court to elect a special judge of said court, which resulted in the election of E. T. WINGO as such special judge, there being more than five practicing attorneys voting at said election, the said E. T. WINGO was declared elected, who took and subscribed the usual oath in such cases prescribed by law."

Objection was made to the sufficiency of the indictment and its validity by proper motions. These were overruled and exceptions saved.

At the August term, 1891, defendant made an application for a continuance of his case, on the ground of physical inability to go to trial on account of sickness. He supported his application by the affidavit of a physician. In opposition to the application, the state filed affidavits contradicting defendant's claim of physical disability. After a hearing by the court, a continuance was denied.

Of the panel of forty jurors, one was named James T. Gideon. He was summoned, examined as to his qualifications, and accepted as one of the forty under his proper name. In the list furnished defendant, his name was given as H. E. Gideon, through mistake of the clerk in copying the names. This person was accepted as one of the twelve, and was named upon the record as H. E. Gideon. Upon returning the verdict, the jury was polled, and it was then discovered that the juror's name was James T. instead of H. E. Gideon. Objection was then and there made by defendant to receiving the verdict upon the ground

that he had not received a true list of the jurors from which to make his challenges, and that James T. Gideon was not the man selected by defendant as one of the jurors. The objection was overruled, and the clerk was ordered to correct the name of the juror upon the record, and the verdict was received and defendant excepted.

The evidence, on the part of the state, tended to prove that Effie McGuire was born August 1, 1877; that defendant was a shoemaker, and worked in a shop in Salem; that at his request the girl went to his shop on several occasions in February, 1888, and he had intercourse with her. Two or three witnesses saw through holes in the ceiling defendant go through the form of sexual intercourse with the girl ·on several occasions in the daytime. The girl made no outcry or noise of any kind. She testified that he had intercourse with her.

The evidence on the part of defendant tended to prove that the girl was born in 1876, and was over twelve years of age when the criminal act was charged to have been committed; that the girl said she never had intercourse with anyone before. There was no evidence of any bruises or laceration. Defendant was about seventy years old and was married.

Defendant's wife testified that he was, and for five years before the criminal act had been, insane. Two physicians testified that, from the facts given in evidence, it was their opinion that Miller was insane, and the very acts testified to by the state's witnesses were the acts of an insane man, and their judgment was upon hearing the whole of the evidence ·that he was insane at the time, and further that they had heard all of the evidence, and that it was practically impossible to have been any penetration by Miller, and if there had been the girl's parts would have been lacerated·

and swollen, and she could not have submitted to a second act without outcry, and would not likely have done so.

Defendant asked, and the court refused to give, three instruction on the law of insanity as applied to the facts in the case. Two of them told the jury in substance, that if defendant's mind was so diseased that he could not and did not realize and understand that he was committing the crime charged, or that the same was a crime, or that he was legally responsible for the act, then they should acquit him. The third told them that if his mind was so impaired that he did not realize the enormity of the crime, or had not power of will sufficient to control his conduct, he was not responsible for his act.

The court on its own motion gave two instructions on insanity; one told the jury that if defendant's mind was so diseased that he could not and did not realize and comprehend the nature of the act, or that as to the act, he did not have mental capacity to know that it was wrong, then he was not responsible for the act and the jury should acquit. The other told them that, though defendant committed the act charged, yet, if at the time he did so, he was in such insane condition of mind that he could not distinguish between right and wrong, or comprehend the nature of the act, then such act was not criminal.

### OPINION.

I. It is insisted as the first error assigned that the proceedings should have been abated and the indictment quashed for the reason that it did not appear from the record, that the oath of office taken by the special judge who held the term of the circuit court of Dent county at which the indictment was preferred, was filed with the clerk.

The record does recite the existence of certain facts, viz., the absence of the judge of the court, which authorized the appointment of a special judge to hold the term; the presence of the requisite number of attorneys; that the election was held by the clerk in all respects as provided, and that E. T. WINGO was elected, and took and subscribed the proper official oath, but it does not recite that the same was filed with the clerk. Section 3328 requires every temporary judge thus elected, before he enters upon the discharge of his duties, to take and subscribe to the same oath, required to be taken by a circuit judge, which shall be filed with the clerk. Section 3329 provides that whenever a temporary judge be elected, an entry thereof shall be made on the records of the court, together with the reasons therefor, and the fact that the requisite oath has been taken and filed.

When the conditions upon which a temporary judge might have been appointed all existed, and the incumbent was duly elected, qualified and took possession of the office, be became a temporary judge of the court *de facto*, though the official oath was not filed as required, and the proceedings of the court, which were unchallenged during his incumbency, cannot be afterwards questioned collaterally.

The provision for appointing a temporary judge of the court was for the benefit of the public, and when the conditions giving a right of appointment existed, and an incumbent is in possession, and acting under color of right, public policy and justice require that his acts shall be held valid so far as they involve the interest of the public and of third persons. *Norton v. Shelby Co.*, 118 U. S. 426; *State v. Carroll*, 38 Conn. 449; *State v. Rich*, 20 Mo. 393; *Burt v. Railroad*, 4 Am. & Eng. Corp. Cases, 426; *State v. Gamble*, 108 Mo. 500.

II.   Complaint is made of the action of the court in overruling the demurrer and motion to quash the indictment on the ground of insufficiency and that it did not charge the crime of carnally and unlawfully knowing a female child under the age of twelve years in the language of the statute.

An indictment in substantially the same language was held good in *State v. Meinhart*, 73 Mo. 562.   In the recent case of *State v. Wray*, 109 Mo. 594, in which the charge in the indictment was in very nearly the exact language of this one, we approved and reaffirmed the doctrine announced in the *Meinhart case*.   For the reasons given in those two cases we must hold this indictment good.

III.   The application for a continuance presented a question of fact as to the physical ability of defendant to attend the trial.   The court heard the evidence, and refused to grant a continuance.   The evidence, we think, justified the court in its conclusions, and nothing was shown or appears which indicates that defendant was prejudiced thereby.

IV.   It is insisted that the court committed error in refusing the third instruction asked by defendant. This instruction asserts the doctrine of irresponsibility for crime committed under uncontrollable impulse, though the perpetrator was fully conscious that the act he was doing was wrong and criminal.   It is now earnestly urged that defendant was not responsible for the criminal act charged, if in its commission, on account of the impairment of the mental and moral powers, he acted from an irresistible and uncontrollable impulse.

In the case of *State v. Huting*, 21 Mo. 476, this court announced the rule as to the responsibility of one, for a crime committed while laboring under partial insanity, as follows:   "The insanity must be such as

to deprive the party charged with the crime of the use of reason in regard to the act done. The prisoner may be deranged on other subjects, but, if capable of distinguishing between right and wrong in the particular act done by him, he is justly liable to be punished as a criminal.''

This rule has never been departed from in this state. In *State v. Pagels*, 92 Mo. 317, it is . said by Sherwood, J.: "It will be a sad day for this state when uncontrollable impulse shall dictate 'a rule of action' to our courts." And in *State v. Turlington*, 102 Mo. 654, it is said: "In all cases where insanity is interposed as a defense, the question, according to the uniform course of decisions in this state, is, whether such insanity rendered the person laboring under it incapable of distinguishing between right and wrong in respect to the act he was about to commit." See also *State v. Erb*, 74 Mo. 203; *State v. Redemeier*, 71 Mo. 175; *State v. Kotovsky*, 74 Mo. 247. The instructions given by the court on the question of insanity followed this rule and correctly declared the law.

V. Defendant objects to an instruction given by the court, which told the jury that "the law presumes the defendant to have been of sound mind at the time of the commission of the offense charged, until the contrary is shown," etc. The objection is that the instruction improperly assumed, and in effect declared, that defendant committed the act charged. The instruction is clearly open to criticism for the reasons urged. An issuable fact, upon which there is a conflict of evidence, should never be assumed to exist by the court in its instructions. *State v. Wheeler*, 79 Mo. 366; *Comer v. Taylor*, 82 Mo. 346.

It is very clear that this instruction, as to the particular complained of, was only intended to fix the time at which the insanity must have existed, in order to

have been available as a defense, and not to declare as a fact that defendant committed the offense charged. The language used was certainly unfortunate, and the instruction standing alone might have misled the jury, but taken in connection with the others given could not have been misconstrued or misunderstood.

The first instruction given at request of defendant told the jury in the clearest and most emphatic terms that there could be no conviction unless defendant had committed the act charged, and the third defined correctly and explicitly what was necessary to be done in order to consummate the crime.

VI. We are unable to see how defendant could have been prejudiced by the fact that James T. Gideon, one of the jurors, was, by mistake of the clerk, impaneled under a wrong given name. His true name was learned when he was examined on his *voir dire*. There was no other person on the panel named Gideon, and there is no suggestion that defendant accepted him as one of the twelve under any misapprehension of his identity.

VII. Lastly, it is insisted that the evidence is not sufficient to justify the conviction. The charge is certainly most incredible. There are circumstances also that make it possible that the act was never fully consummated, and that defendant was, at that time, laboring under partial insanity; but these questions were all submitted to and determined by the jury under very favorable instructions. The verdict was authorized by the evidence, the circuit court was satisfied, and this court should not interfere. Finding no error prejudicial to defendant, the judgment is affirmed. All concur.