## J. EDWARD REGAN *v.* STATE OF MISSISSIPPI.

### [39 South. Rep., 1002.]

1. CRIMINAL LAW.  *Change of venue.  Appeal.  Harmless error.  Peremptory challenges.  Failure to exhaust.*

    A conviction of murder will not be reversed on appeal because of the denial of a change of venue:

    (*a*) Unless it clearly appear that the trial court abused its discretion; nor then

    (*b*) Unless it appear that the accused exhausted his peremptory challenges.

2. SAME.  *Instructions.  Reasonable doubt.*

    On the trial of a murder case, an instruction to the effect that the jury might conscientiously believe the defendant guilty, and yet not believe him guilty beyond a reasonable doubt, and in such case they should acquit, may properly be refused where another instruction had been given telling the jury to acquit unless satisfied of the defendant's guilt beyond every reasonable doubt arising from the evidence, as unnecessary and a useless refinement.

Statement of the case.

3. SAME. *Homicide. Instructions.*

An instruction in a murder case which predicates the defendant's asserted right to kill of certain overt acts of the deceased, at the time of the killing, may properly be refused if it omit the idea that the overt acts reasonably induced defendant to believe that he was in danger of great bodily harm.

4. SAME.

In a prosecution for murder, where the accused defended upon the ground that he did the killing because he thought his life in danger from a pistol about to be drawn by the decedent, and that he shot in self-defense, it is proper to modify a requested instruction predicated of such defense by inserting the condition that the defendant must have shot the deceased by reason of the belief actually engendered in his mind that his life was in danger.

5. SAME.

Where, on the trial of a murder case, the defense was that the deceased attempted to draw a pistol to shoot defendant at the time defendant killed him, it is proper to modify a defendant's instruction by inserting a proviso to the effect that to warrant an acquittal defendant must have had reasonable ground to believe, and did believe, that it was necessary for him to shoot the deceased in order to protect his own life or himself from bodily harm.

6. SAME. *Argument of counsel. Question not raised below.*

Where no objection was made at the time in a murder case to the language of the district attorney in argument to the jury, a conviction will not be reversed therefor.

FROM the circuit court of Claiborne county.

HON. OLIVER W. CATCHINGS, Judge.

Regan, the appellant, was indicted and tried for and convicted of the murder of one Moody; was sentenced to be hanged, and appealed therefrom to the supreme court.

The record shows that the court below, on the hearing of the motion for a change of venue, examined a large number of witnesses, and, after hearing their testimony, overruled the motion.

The instructions asked by defendant which the court refused to give are as follows:

"(10) The court instructs the jury for defendant that if they believe from the evidence that when Moody met Regan at Anderson's old store he stopped his horse; that Regan walked around to his side and asked him if he had called him a son of a bitch and had said that he (Moody) intended to kill him (Regan); and that thereupon Moody immediately answered, 'Yes, you damned son of a bitch, I intend to kill you,' and accompanied such reply with a movement showing purpose to leap from his horse on Regan, and made a motion of his hand as if to draw a deadly weapon—then Regan had a right to act at once in self-defense, even if it afterwards appeared that Moody had no deadly weapon on his person. If they further believe from the evidence that Regan shot Moody in the back under such state of facts, and after they had been scuffling, while Moody was turning to run or was actually running, deliberation is not, in the nature of things, predicable of Regan in such a situation, and they should acquit Regan, even though they believe from the evidence Regan shot Moody in the back while he was turning to run or was actually running. . . .

"(13) The court instructs the jury that they may conscientiously believe that Regan is guilty, yet may not believe it beyond a reasonable doubt; and if they do not believe from the evidence beyond a reasonable doubt, they should acquit, notwithstanding they conscientiously believe him guilty aside from the evidence."

The ninth instruction asked by defendant was modified by the court, and as modified, the modification being indicated by italics, is as follows:

"(9) The court instructs the jury for defendant that, if they believe from the evidence Moody had made threats and preparation indicating a purpose to commit an assault upon Regan, with intent to kill him or to do him some great bodily harm; or if they believe from the evidence Moody and Shannon had been conspiring together for such purpose, and, having done so, either

one of them made threats manifesting a purpose to commit an assault upon Regan, with intent to kill him or to do him some great bodily harm, and that part of such threats had been communicated to Regan and part had not, then Regan had a lawful right to arm himself in anticipation of such assault; and if they further believe from the evidence that he and Shannon had entered upon a common purpose to kill Regan or to do him some great bodily harm, and that they met in Smith's store, obtained and prepared cartridges, and secured deadly weapons with such design, and that such preparations were made known to Regan, then Regan was not bound, when he and Moody met, to wait until Moody got upon equal terms with himself before he could lawfully slay him. If, then, the jury believe from the evidence that Moody and Shannon had an altercation with Regan in the morning; that they went to Smith's store, got a shotgun or other deadly weapon, cut cartridges and put them in a breech-loading shotgun, placed such gun on the counter, and declared a purpose to kill Regan or to do him some great bodily harm; that afterwards, in the evening of the same day, Regan and Moody met, on the walk leading from Regan's residence towards the depot; that Regan asked Moody why he was cursing him and threatening to kill him, and that Moody then reiterated a purpose so to do, at the same time manifesting a purpose by conduct and gesture so to do, or apparently manifested such purpose, the same then being imminent and impending, or apparently so to Regan; *and that by reason of the belief engendered in Regan's mind that his life was in danger, and to defend himself, he shot and killed the deceased*—then they should acquit Regan, even though they believe from the evidence Moody actually had no deadly weapon of any kind on his person."

The fourteenth instruction asked by defendant was also modified by the court, and as modified, the modification being indicated by italics, is as follows:

"(14) The court instructs the jury for defendant that if they

believe from the evidence that when Moody met Regan at Anderson's old store he stopped his horse; that Regan walked around to his side and asked him if he had called him a son of a bitch and had said that he (Moody) intended to kill him (Regan); and that thereupon Moody immediately answered, 'Yes, you damned son of a bitch, I intend to kill you,' and accompanied such reply with a movement showing purpose to leap from his horse upon Regan, and made a motion of his hand as if to draw a deadly weapon, and did actually so leap from his horse—then Regan had a right to act at once if, circumstanced as he was, the jury believe from the evidence he had reasonable grounds to believe, and did believe, that his life was in peril, or he was in peril of great bodily harm, even if it afterwards appeared that Moody had no deadly weapon on his person, and even if they further believe from the evidence that Regan shot Moody in the back after they had been scuffling, while he was turning to run and was actually running, *provided they further believe from the evidence that under the circumstances Regan had reasonable grounds to believe, and did believe, that it was necessary to so shoot Moody in the back to protect himself from great bodily harm.*"

*J. McC. Martin,* for appellant.

Counsel cited the following authorities: *Lee* v. *State,* 45 Miss., 114; *Welch* v. *State,* 68 Miss., 341 (s.c., 8 South. Rep., 673); *Beasley* v. *State,* 64 Miss., 518 (s.c., 8 South. Rep., 234); *Bang* v. *State,* 60 Miss., 571; *Kendrick* v. *State,* 55 Miss., 447; *Com.* v. *Baldwin,* 129 Mass., 481; *Roberson* v. *State,* 123 Ala., 26; *Long* v. *State,* 81 Miss., 448 (s.c., 33 South. Rep., 224); *Broznack* v. *State,* 109 Ga., 514; *Raggio* v. *People,* 135 Ill., 533; *Jackson* v. *State,* 116 Ind., 464; *People* v. *Dane,* 59 Mich., 550 (26 N. W. Rep., 781); *Bassette* v. *State,* 101 Ind., 85; *People* v. *Ecarius,* 124 Mich., 616; *People* v. *Mull,* 167 N. Y., 247; *People* v. *Lechuck,* 78 Cal.,

317; *State* v. *Irwin,* 71 Pac., 608; *People* v. *Carr,* 31 N. W. Rep., 590; *People* v. *Derbert,* 138 Cal., 467.

*R. V. Fletcher,* assistant attorney-general, for appellee.

Counsel cited the following authorities: *Posey* v. *State,* 86 Miss., 141 (s.c., 38 South. Rep., 324); Code 1892, §§ 2375, 2389; *Story* v. *State,* 68 Miss., 609; (s.c., 10 South. Rep., 47); *Lee* v. *State,* 45 Miss., 114; *Dillard* v. *State,* 58 Miss., 368; *Joyce* v. *Com.,* 78 Va., 287; *Waller* v. *Com.,* 84 Va., 492; *Frank* v. *Avery,* 21 Wis., 168; *State* v. *Reno,* 41 Kan., 674; *Bang* v. *State,* 60 Miss., 571; *Parker* v. *State,* 55 Miss., 414; *Kendrick* v. *State,* 55 Miss., 436; *Cartwright* v. *State,* 71 Miss., 82 (s.c., 14 South. Rep., 526); *Cavanah* v. *State,* 56 Miss., 299; *Lamar* v. *State,* 65 Miss., 93 (s.c., 3 South. Rep., 78); *Hemingway* v. *State,* 68 Miss., 371 (s.c., 8 South. Rep., 317); *East St. Louis Connecting R. Co.* v. *O'Hara,* 150 Ill., 580; *Prather* v. *Clelland,* 28 S. W., 94; *State* v. *Mallon,* 75 Mo., 355; *Baldt* v. *State,* 35 N. W., 935; 2 Ency. Pl. & Pr., 726, and cases there cited; *State* v. *Griffin,* 87 Mo., 608; 2 Ency. Pl. & Pr., 742, 747, and cases cited in notes, especially: *Schotter* v. *State,* 127 Ind., 493; *State* v. *Emory,* 79 Mo., 461; *State* v. *Shoween,* 20 S. C., 873; *State* v. *Brooks,* 92 Mo., 542.

Argued orally by *John McC. Martin,* for appellant; and by *R. V. Fletcher,* assistant attorney-general, for appellee.

CALHOON, J., delivered the opinion of the court.

We do not think there was such an abuse of discretion in refusing a change of venue as warrants the intervention of this court. *Bishop* v. *State,* 62 Miss., 290; *Dillard* v. *State,* 58 Miss., 368. If there was error, we should not interfere where, as here, appellant did not exhaust his peremptory challenges. See the authorities cited in the brief of the assistant attorney-general on this point.

Appellant seems to have had a perfectly fair trial, and his defense was conducted by his counsel with very great ability.    He had every principle of law to which he was entitled embodied in the instructions given by the court.    His thirteenth instruction was properly refused.    Others of them gave him the full benefit of any reasonable doubt.    This does no more, and was unnecessary, and is a useless refinement.    Belief in a charge implies conscientious belief, and the jury were repeatedly told to acquit unless satisfied of his guilt beyond every reasonable doubt.    This is enough, and carries with it the idea that they might believe him guilty, and yet should acquit unless they believed it—equal to "conscientiously" believed it—beyond reasonable doubt.    The tenth instruction was properly refused.    It omits the vital feature that the overt acts might reasonably induce, and did induce, the belief of danger of death or great bodily harm then about to be done the accused.    It directs · this conclusion as matter of law, without reference to belief or what the jury might conclude from the facts shown.    The modification of the ninth instruction is quite clearly not reversible error in this case, as the question—if there was a question—was one of danger of life from a pistol about to be drawn, and the accused testified that he thought his life was in danger and shot to save it.    The modification of the fourteenth charge cannot properly be complained of.    It sought to exonerate Regan for shooting deceased "in the back," and the court interposed the proviso that he had grounds to believe, and did believe, it was necessary to shoot him in the back "to protect himself from great bodily harm."    This assumes no fact not assumed by the charge as offered.

This case will not be reversed because of the language of the district attorney used in argument.    No objection was made at the time it was used.    *Powers* v. *State,* 83 Miss., 691 (36 South. Rep., 6) ; *Cartwright* v. *State,* 71 Miss., 82 (14 South. Rep., 526).    The evidence very amply sustains the verdict.

*Affirmed.*